PETER CAHILL, Appellant, v. STANDARD MARINE INSUR-
ANCE COMPANY, LIMITED, OF LIVERPOOL, Respondent.

Insurance (marine) — construction of clause in policy covering
loss or injury to vessels while towed by tug "either alongside or
at the end of a hawser" — evidence — effect of findings made by
Federal court in action against owner of tug for loss of vessel.

The plaintiff was the owner of a seagoing steam tug engaged
in towing operations.   As such owner he took out a policy with the
defendant upon the "Towers Liability of the  *  *  *  Tug," and
which policy amongst other things covered "only the legal liability
of the said tug for loss or damage and charges  *  *  *  when such
legal liability of said tug shall have been incurred or caused by
injury to any other vessel or crafts  *  *  *  by stranding and or
collision while they shall be in tow of the said tug, either alongside
or at the end of a hawser."  While the tug was by hawser towing
a dredge and scows it ran into a storm and its master, as claimed
on behalf of plaintiff, for the purpose of saving the men on the
dredge, cut the hawser and took them off.  He then without again
having taken the tow in charge either by reattaching the hawser
or by fastening "alongside," abandoned it and allowed the craft to
drift on shore where they were destroyed or injured.  In this action
for the purpose of establishing that he had incurred a liability for
the loss of the craft covered by his policy with defendant, plaintiff
offered in evidence a decree in a proceeding in the United States
Circuit Court holding him liable to the owner of the craft.  The
defendant herein then offered in evidence the opinion handed
down with such decree showing that plaintiff had been held liable
on the ground that the master of the tug made no sufficient effort
to retake the tow after it had been cut loose and the men on the
dredge had been rescued.  Plaintiff also offered independently of
said decree to prove facts tending to show that his master was
justified in cutting loose from and subsequently abandoning the
tow, but this evidence was excluded.

Held, that the exclusion of the latter class of evidence did not
injure plaintiff, for if it had been received it would have tended to
establish that he had not incurred any liability to the owner of the
tow which was insured against by defendant's policy; also that if
the decree of the United States Court on the other hand was con-
trolling in the action it established that plaintiff's liability arose
because his master unjustifiably abandoned the tow after it had

been adrift some time without again having taken it in charge and that under those circumstances it could not be said that his liability for loss of the craft arose by "stranding * * * while * * * in tow of said tug, either alongside or at the end of a hawser," within the terms of the policy, and hence, that on neither theory could there be a recovery.

*Cahill* v. *Standard Marine Ins. Co.*, 139 App. Div. 780, affirmed.

(Argued December 13, 1911; decided January 16, 1912.)

APPEAL from a judgment, entered September 2, 1910, upon an order of the Appellate Division of the Supreme Court in the second judicial department, overruling plaintiffs' exceptions, ordered to be heard in the first instance by the Appellate Division, and directing a dismissal of the complaint.

The action was brought to recover on a policy of marine insurance issued by the defendant to the plaintiff. It insured him in the sum of fifteen thousand dollars against his "tower's liability" as the owner of a steam tug engaged in towing operations, and, as indicated, its purpose was to indemnify him within certain limitations against liability which he might incur by reason of damages accruing to "vessels or crafts" while being towed by his tug.

Said policy, amongst others, contained the following clauses:

"This policy shall cover only the legal liability of the said tug for loss or damage and charges as herein provided, when such legal liability of said tug shall have been incurred or caused by injury to any other vessels or crafts, * * * by stranding and or collision while they shall be in tow of the said tug, either alongside or at the end of a hawser. * * *

"This Company shall not be liable for any loss or damage under this policy, unless the liability of the said tug for such loss or damage shall have been first determined by a suit at law or otherwise, if this Company shall so elect."

The primary facts which gave rise to the litigation are as follows:

The plaintiff, as the owner of said tug, made a contract by which he undertook to tow a dredge, some dump scows and a water boat from Peekskill, New York, to Plymouth, Massachusetts. While off Cape Cod the tug with its tow ran into a storm, and, as originally claimed, for the purpose of saving the lives of the men who were on the dredge, the captain of the tug cut the hawser and let the dredge and scows adrift. After having rescued the men and without having retaken the tow either by means of the hawser or by fastening alongside, the tug put out to sea, abandoning the tow, and the craft composing it drifted on shore and were injured or destroyed, and claims were made by their owner against the tug for damages. The plaintiff then instituted in the United States District Court what were called limitation proceedings for the purpose of having adjudicated his liability, he alleging that his representatives were not guilty of negligence or misconduct either in cutting loose the tow or in subsequently abandoning it and the claimants urging the contrary view. The District Court held that the plaintiff was liable, and, as indicated by its opinion, it placed this liability on the two grounds, *first*, that the hawser was unjustifiably cut, and, *second*, that the tug did not make suitable efforts to retake the tow after the men were rescued. On appeal the Circuit Court of Appeals reaffirmed this liability, but, as indicated by its opinion, only because of the failure to use reasonable efforts to pick up the tow after the men had been rescued and without passing on the propriety of the original act of the master in cutting the hawser.

On the trial of this action, and for the purpose of establishing the liability of the defendant as insurer against his own liability, the plaintiff offered in evidence the decrees of the District and Circuit Courts respectively in the above-mentioned proceedings, and the defendant

thereupon offered in evidence, and they were received over plaintiff's objections, the opinion of each of said courts showing the grounds on which said decrees had proceeded. Plaintiff further proposed to prove in substance by parol evidence that the hawser was cut for the purpose of saving the men on the dredge and that the tug went back and took the men off, and that then, owing to the conditions resulting from the storm, it was compelled to abandon the tow, not being able to come nearer than from fifteen to twenty-five feet from the dredge.

*John F. Foley* and *Frank A. Spencer, Jr.*, for appellant. Upon the facts found and under the decision of the admiralty courts the tow was alongside or at the end of a hawser when the liability of the tug was incurred. (*Egbert* v. *S. P. & M. Ins. Co.*, 71 Fed. Rep. 741; *Rogers* v. *A. Ins. Co.*, 95 Fed. Rep. 103; *Rider* v. *S. R. T. Co.*, 171 N. Y. 147; *Preston* v. *Ætna Ins. Co.*, 193 N. Y. 142, 144; *Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307; *Michael* v. *Prussian Nat. Ins. Co.*, 171 N. Y. 25.) The statements in the opinions of the admiralty court are not conclusive against plaintiff's recovery. (*R. Ins. Co.* v. *Herbert*, 87 Hun, 285; *McWilliams* v. *H. Ins. Co.*, 40 App. Div. 400; *Carleton* v. *Lombard, Ayers & Co.*, 149 N. Y. 137; *Hymes* v. *Estey*, 116 N. Y. 501; *Reynolds* v. *Ætna Ins. Co.*, 160 N. Y. 651; *Bell*, v. *Merrifield*, 109 N. Y. 202; *Griffen* v. *Keese*, 187 N. Y. 464; *E. C. Co.* v. *Gildersleeve*, 160 Fed. Rep. 47; *Cleveland* v. *Chisholm*, 90 Fed. Rep. 431; *The Brandywine*, 87 Fed. Rep. 653; *Pioneer Fuel Co.* v. *McBrier*, 84 Fed. Rep. 497.) The phrase "alongside, or at the end of a hawser" means no more than that the vessel should be engaged in a contract of towage when her liability and the loss shall have been incurred. (Arnold on Insurance [8th ed.], §§ 888, 889, 890; Richards on Insurance [3d ed.], 645; *Fletcher* v. *Englis*, 2 B. & Ald. 315; Joyce on Insur-

13

ance, 2759; *Baker* v. *Slowry*, 1 Stark. 436; *McDougall* v. *Royal Exch. Ass. Co.*, 4 Camp. 283; *Egbert* v. *St. P. F. & M. Ins. Co.*, 71 Fed. Rep. 739; *McMaster* v. *N. Y. L. Ins. Co.*, 183 U. S. 25; *Griffey* v. *N. Y. C. Ins. Co.*, 100 N. Y. 417; *Holly* v. *Met. Life Ins. Co.*, 105 N. Y. 437; *De Vitt* v. *P. W. Ins. Co.*, 61 App. Div. 393; 173 N. Y. 73; *Nelson* v. *Traders Ins. Co.*, 86 App. Div. 66; *Huntley* v. *Providence - Washington Ins. Co.*, 77 App. Div. 196; *Colt* v. *Phenix Ins. Co.*, 54 N. Y. 595; *E. F. Ins. Co.* v. *Royal Ins. Co.*, 55 N. Y. 343; *Unita Tunnel Co.* v. *Ajax Gold Min. Co.*, 141 Fed. Rep. 563.) The cutting of the hawser or the failure to reattach it, when done to save human life, did not avoid the policy, and there was no severance at law within its meaning. (*Bond* v. *Cora*, 2 Wash. C. C. 80; *Thebaud* v. *G. W. Assur. Co.*, 155 N. Y. 516; *Graham* v. *C. Ins. Co.*, 11 Johns. 352; *Company of African Merchants* v. *British Ins. Co.*, L. R. [8 Exch.] 154; 3 Kent's Comm. 313; *The Iroquois*, 118 Fed. Rep. 1003; 113 Fed. Rep. 964.)

*James K. Symmers* and *James Emerson Carpenter* for respondent. Upon the facts found and under the decisions of the admiralty courts the tow was not "alongside" or at the "end of a hawser," within the meaning of the policy when the disaster occurred. (*Straits of Dover*, 99 Fed. Rep. 787; *Asiatic Prince*, 97 Fed. Rep. 343; *Rogers* v. *Ætna Ins. Co.*, 95 Fed. Rep. 103; *Ferguson* v. *P. W. Ins. Co.*, 125 Fed. Rep. 141; *Allen* v. *G. A. Ins. Co.*, 123 N. Y. 6; *I. F. Ins. Co.* v. *Coos County*, 151 U. S. 452; *M. P. Ry. Co.* v. *W. A. Co.*, 129 Fed. Rep. 610; *Dwight* v. *G. F. Ins. Co.*, 103 N. Y. 341.) Plaintiff cannot invoke the decree holding the tug liable and at the same time ignore the findings of fact upon which the decree was based and seek to recover against the defendant on an alleged state of facts that, if true, is entirely inconsistent with any liability of the tug. (*R. Ins. Co.* v. *Herbert*, 87 Hun, 285; *W. G. Co.*

v. *District of Columbia*, 161 U. S. 316; *Matter of Morrison*, 147 U. S. 34.)

Hiscock, J.   The plaintiff was the owner of a sea-going steam tug engaged in towing operations.   As such owner he took out a policy with the defendant upon the "Towers Liability of the  *  *  *  Tug," and which policy amongst other things covered " only the legal liability of the said tug for loss or damage and charges *  *  *  when such legal liability of said tug shall have been incurred or caused by injury to any other vessel or crafts  *  *  *  by stranding and or collision while they shall be in tow of the said tug, either alongside or at the end of a hawser."

While said tug was by hawser towing a dredge and scows it ran into a storm off Cape Cod and its master, as subsequently claimed on behalf of plaintiff, for the purpose of saving the men on the dredge, cut the hawser and took them off.   He then without again having taken the tow in charge either by re-attaching the hawser or by fastening "alongside," abandoned it and allowed the craft to drift on shore where they were destroyed or injured.   Under these circumstances, having been held liable for damages sustained by the owner of the abandoned craft in proceedings instituted in the United States court, plaintiff seeks to compel the defendant to reimburse him under its policy of insurance.   In order to succeed he was bound to establish, *first*, that he incurred legal liability by reason of the stranding of the tow and, *second*, that such liability arose and stranding occurred while the craft were "in tow  *  *  *  either alongside or at the end of the hawser," in accordance with the explicit provision of the policy.   He claims that he was prevented from doing this by various erroneous rulings by the trial court and the exceptions to these rulings in the main present the questions here to be considered.

In determining whether plaintiff produced or offered to produce any evidence tending to sustain his burdens, we are led first to review and consider the effect of the proceedings in the United States courts wherein he was held to be liable to the owner of the stranded craft.

Plaintiff alleged therein and the claimant denied that the conduct of the master was entirely proper, and that no liability attached by reason of the stranding of the dredge and scows. The District Court found against plaintiff and held him liable on the grounds, if we are permitted to look at its opinion, *first,* that it was improper to cut the hawser, and, *second,* on the ground that no sufficient effort was made subsequently to take the tow in charge after the men had been rescued from the dredge. The Circuit Court of Appeals affirmed his liability on the latter ground without passing upon the former one.

It seems to be well settled that on appeal from a decree of the District Court to the Circuit Court of Appeals in such a case as this, the latter court considers all the evidence *de novo* and renders a decree which entirely supplants that of the first court, and, therefore, we are concerned simply with the proceedings of the Circuit Court. (*Gilchrist* v. *Chicago Ins. Co.,* 104 Fed. Rep. 566; *Munson S. S. Co.* v. *Miramar S. S. Co.,* 167 Fed. Rep. 960.)

It is insisted by the appellant that it was improper to receive in evidence the opinion of the court for the purpose of disclosing the grounds on which it held plaintiff liable for the stranding of the boats, but I view the matter otherwise.

The plaintiff in this action, for the purpose of establishing that he had incurred under his towing contract a liability covered by defendant's insurance policy, offered in evidence the decree of the Circuit Court holding him in damages. It is understood that as a matter of practice the opinion handed down by that court in connection

with the decree really serves the purpose of findings, and if that is so, such opinion was of course competent evidence to prove the grounds on which the decree had proceeded.   It must be that a party will be allowed in some way, when relevant, to show the grounds upon which a court has based its decision, and there was no other competent evidence by which to prove these facts in this case than by the opinion.   Furthermore, as I shall show hereafter, the plaintiff himself needed the evidence.

We, therefore, have it established by that decree, as between the plaintiff and the owner of the dredge and other boats, that plaintiff's liability arose because, after the tow had been adrift for some time, the master did not use reasonable efforts to recapture it and put it at the end of a hawser or alongside.

It is unnecessary to decide whether this determination of the ground of plaintiff's liability under his towing contract is conclusive as between him and the present defendant.   If it is conclusive, then it determines that the tow was not actually at the end of a hawser or alongside when plaintiff's liability arose.

If it is not conclusive and plaintiff had the right in this action to prove by other evidence that he incurred a liability of a character covered by the defendant's policy, then we become concerned with the evidence which he proposed and offered.   His counsel's opening and offers of evidence disclose a purpose to prove that the cutting of the hawser was justifiable in an attempt to save the lives of the men on the dredge; that the tug never again was within fifteen feet of or in any manner attached to the craft being towed, and finally was compelled by storm conditions to abandon them and they stranded.

The apparent effect of the evidence thus outlined would have been to establish that plaintiff's master behaved properly and justifiably, and if this is so plaintiff did not incur any liability, insured against by defendant's policy. His counsel seems to argue that for the purpose of hold-

ing defendant he could show that the conduct of the master in cutting the hawser and subsequently abandoning the tow were justifiable without at the same time establishing that he incurred no liability to the owner of the tow. I am, however, unable to perceive any such distinction, and it is at variance with the history of the entire litigation springing out of the stranding. While there is no very definite or complete evidence concerning the terms of plaintiff's towing contract, it has been assumed that he did not become liable to the owner for the damage to the dredge and scows unless their stranding was due to some misconduct on the part of the master of the tug. The plaintiff was held liable in the United States court on the distinct issue that his master was not justified in doing as he did, and if plaintiff should now disregard the determination of that court and prove that his master was without fault he would necessarily destroy the first requisite of success in this litigation by showing that he incurred no liability.

It seems to me, therefore, that plaintiff himself is compelled to rely on the proceedings in the Circuit Court including the opinion as the only evidence received or offered which can even be claimed to show that he incurred a liability of a character and under conditions covered by his policy.

Thus we are brought to the final question in the case which is, if the master of a tug justifiably cuts loose his tow and then after some considerable time without again being attached to it either by hawser or alongside unjustifiably abandons it and the craft subsequently drift on shore, can it be said that the tugowner has incurred liability for the loss of the craft by "stranding * * * while * * * in tow of said tug, either alongside or at the end of a hawser?" It seems to me that this question must be answered in the negative.

It is not necessary to hold, as argued by the respondent's counsel, that in order to comply with the terms of

the policy vessels must be actually at the end of a hawser or attached alongside the tug at the moment the stranding occurs in order to come within the fair meaning of the policy. While not intending to pass on that question I am not prepared to say that if the master had unwarrantably cut the hawser and then straightway the boats had stranded as the immediate and proximate result, the liability might not be one within the contemplation of the policy. But that question is not the one presented here. We are bound to assume in this case that the original severing of the hawser was not negligent or improper. The liability of the plaintiff arose subsequently when the boats for some time had been adrift because his master did not make a reasonable effort to again take them in charge. They had not for some time been actually and really at the end of a hawser or alongside the tug. For an appreciable period they had been entirely detached from it and adrift. They had been effectually and for a considerable time abandoned before they went ashore. The plaintiff's liability has been predicated on an act intermediate the cutting of the hawser and the stranding, and I think it would be a forced and unwarranted construction of the policy to hold that figuratively and constructively the craft were so at the end of a hawser or alongside when the stranding occurred as to come within the terms of the policy.

The judgment should be affirmed, with costs.

GRAY, HAIGHT, VANN and COLLIN, JJ., concur; CULLEN, Ch. J., and WILLARD BARTLETT, J., concur in result.

Judgment affirmed.